# United States Court of Appeals for the Federal Circuit

---

**IN RE: GUILD MORTGAGE COMPANY,**
*Appellant*

---

2017-2620

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 86709944.

---

Decided: January 14, 2019

---

GEORGE EHRICH LENZ, Incorvaia & Associates, APC, Carlsbad, CA, argued for appellant. Also represented by JOEL L. INCORVAIA.

THOMAS L. CASAGRANDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, CHRISTINA J. HIEBER, MARY BETH WALKER.

---

Before MOORE, REYNA, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge.*

Guild Mortgage Co. ("Guild") appeals a decision of the Trademark Trial and Appeal Board affirming the examiner's refusal to register the mark "GUILD MORTGAGE COMPANY" and design shown below based on a likelihood of confusion with the registered mark "GUILD INVESTMENT MANAGEMENT." Because the Board failed to consider relevant evidence and argument directed to *DuPont* factor 8, we vacate and remand.

## BACKGROUND

Guild is in the business of making mortgage loans and has used the mark "GUILD MORTGAGE COMPANY" since 1960. Guild was founded in San Diego, California, and has expanded to over 40 other states. It applied to register the mark "GUILD MORTGAGE COMPANY," and design, in International Class 36 for "mortgage banking services, namely, origination, acquisition, servicing, securitization and brokerage of mortgage loans." J.A. 1–2; J.A. 32. The application states that color is not claimed as a feature of the mark and that the "mark consists of the name Guild Mortgage Company with three lines shooting out above the letters I and L": J.A. 2; J.A. 31.



Registration was refused due to a likelihood of confusion between Guild's mark and the mark "GUILD INVESTMENT MANAGEMENT" registered in International Class 36 for "investment advisory services," which is owned by Guild Investment Management, Inc. ("Registrant"), an investment company in Los Angeles, California. The examiner concluded there was a likelihood of confusion based on her findings that the marks, nature of the services, and trade channels were similar. The Board affirmed those findings, concluding that, on balance, those factors outweighed the Board's finding that consumers "may exercise a certain degree of care in investing money, if not perhaps in seeking a mortgage loan." J.A. 10–11. Guild appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Section 2(d) of the Lanham Act provides that the Patent and Trademark Office may refuse to register a trademark if it so resembles a prior used or registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Whether a likelihood of confusion exists is determined using the factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973). Likelihood of confusion is a question of law based on underlying factual findings made pursuant to the *DuPont* factors, which on appeal from the Board are reviewed for substantial evidence. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014). Those factors are:

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an applica-

tion or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The conditions under which and buyers to whom sales are made, i.e. "impulse" vs. careful, sophisticated purchasing.

(5) The fame of the prior mark (sales, advertising, length of use).

(6) The number and nature of similar marks in use on similar goods.

(7) The nature and extent of any actual confusion.

(8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.

(9) The variety of goods on which a mark is or is not used (house mark, "family" mark, product mark).

(10) The market interface between applicant and the owner of a prior mark . . . .

(11) The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12) The extent of potential confusion, i.e., whether de minimis or substantial.

(13) Any other established fact probative of the effect of use.

*Id.* at 1319–20 (citing *DuPont*, 476 F.2d at 1361).

On appeal, Guild argues the Board's findings with respect to *DuPont* factors 1 through 3 are not supported by substantial evidence. It also argues the Board failed to address its argument and evidence directed to *DuPont*

factor 8. Because we agree that the Board failed to consider relevant argument and evidence directed to *DuPont* factor 8, we vacate and remand and do not reach Guild's arguments regarding the other factors.

"In every case turning on likelihood of confusion, it is the duty of the examiner, the board and this court to find, upon consideration of *all* the evidence, whether or not confusion appears likely." *DuPont*, 476 F.2d at 1362 (emphasis in original). "In discharging this duty, the thirteen *DuPont* factors 'must be considered' 'when [they] are of record.'" *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406 (Fed. Cir. 1997) (quoting *DuPont*, 476 F.2d at 1361). This is true even though "not all of the *DuPont* factors are relevant or of similar weight in every case." *Id.* at 1406; *see also Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002) (noting the likelihood of confusion analysis "considers all *DuPont* factors for which there is evidence of record" but may focus on dispositive factors).

The Board erred by failing to address Guild's argument and evidence related to *DuPont* factor 8, which examines the "length of time during and conditions under which there has been concurrent use without evidence of actual confusion." *DuPont*, 476 F.2d at 1361. In response to the examiner's refusal to register Guild's mark on the basis of likelihood of confusion, Guild argued that it and Registrant have coexisted in business for over 40 years without any evidence of actual confusion. Guild attached the declaration of Mary Ann McGarry, its President and CEO, who stated that

> Guild is not aware of any instances of actual confusion, or of any evidence to indicate that actual confusion has ever existed between Guild's use of the mark "GUILD MORTGAGE COMPANY" and the mark "GUILD INVESTMENT MANAGEMENT," or any other mark incorporat-

ing the term "Guild." Guild has never received any communication from Guild Investment Management, Inc., or from any third party contending that Guild's use of its mark has infringed upon Guild Investment Management Inc[.]'s mark, or has caused confusion with regard to any other business which uses or incorporates the word "Guild" in its mark, in any way. Guild has no knowledge of ever receiving any inquiries from consumers regarding investment management services of any kind. Guild has never received any communication from consumers or any third party inquiring as to whether Guild was in any way affiliated with Guild Investment Management, Inc.

J.A. 139 ¶ 5; *see also* J.A. 130. The examiner rejected this argument in a final office action refusing registration of Guild's mark. On appeal to the Board, Guild argued that as to *DuPont* factor 8, the examiner failed to consider that "the fact that there has been over 40 years of concurrent use of [both marks] with no evidence of actual confusion demonstrates that there is no possibility of confusion in the minds of consumers between [both marks]." J.A. 439 (emphasis in original) (citing J.A. 139 ¶ 5); *see also* J.A. 438–40, 420, 474.

In its decision, the Board stated that it "consider[ed] the *DuPont* factors for which there were arguments and evidence" and considered the others to be neutral. J.A. 3. The Board's opinion, however, provides no indication that it considered *DuPont* factor 8, for which there was argument and evidence. The Board's opinion does not mention factor 8, let alone address Guild's argument and evidence directed to that factor. The Board erred in failing to consider Guild's arguments and evidence. *Cf. Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1340 (Fed. Cir. 2015) (vacating and remanding where the Board did not properly assess all relevant evidence);

*Hewlett-Packard*, 281 F.3d at 1267 ("Because it must consider each *DuPont* factor for which it has evidence of record, the Board erred when it declined to compare the services described in Packard Press's application with the goods and services described in HP's registrations." (citation omitted)); *DuPont*, 476 F.2d at 1362 ("We find no warrant, in the statute or elsewhere, for discarding *any* evidence bearing on the question of likelihood of confusion." (emphasis in original)).

The PTO responds that the Board properly need not credit this argument because in *ex parte* registration proceedings, the "uncorroborated statements of no known instances of actual confusion" of the only party involved in the case are "of little evidentiary value." Appellee's Br. 42 (quoting *In re Majestic Distilling Co.*, 315 F.3d 1311, 1317 (Fed. Cir. 2003)). And during oral argument, the PTO argued that evidence related to *DuPont* factor 8 was "irrelevant." Oral Arg. at 24:06–25:12, 26:36–27:40. But these proclamations to dismiss Guild's evidence out of hand sweep too broadly. *DuPont* factor 7 considers the "nature and extent of any actual confusion." *DuPont* factor 8 considers the "length of time during and conditions under which there has been concurrent use without evidence of actual confusion." In *Majestic Distilling,* this court held, "[w]ith regard to the seventh *DuPont* factor, we agree with the Board that Majestic's uncorroborated statements of no known instances of actual confusion are of little evidentiary value." 315 F.3d at 1317. The *Majestic Distilling* court did not extend this holding to the eighth factor, which it termed one of Majestic's "principal challenge[s]." *Id.* The court considered evidence that the marks were used concurrently for 16 years without creating confusion. *Id.* Such evidence weighs against a likelihood of confusion, but must then be balanced against the other evidence of record. The *Majestic Distilling* court held that while "Majestic's principal arguments are not

without merit, . . . we find the balance in this case tilts towards a likelihood of confusion." *Id.* at 1319.

In this case, although Guild did not submit declarations from the owner of the registered mark or other parties testifying as to the absence of actual confusion, Guild nonetheless presented evidence of concurrent use of the two marks for a particularly long period of time—over 40 years—in which the two businesses operated in the same geographic market—southern California—without any evidence of actual confusion. Further, the Board has found that Guild's and Registrant's services are similar and move in the same channels of trade, which is relevant when assessing whether the absence of actual confusion is indicative of the likelihood of confusion. The Board erred in its analysis by failing to consider this evidence and argument as to factor 8. Because this evidence weighs in favor of no likelihood of confusion, we do not deem the Board's error harmless. We make no assessment as to the evidentiary weight that should be given to Guild's CEO's declaration and simply hold that it was error to not consider it. We leave it to the Board to reconsider its likelihood of confusion determination in the first instance in light of all the evidence.

## CONCLUSION

For the foregoing reasons, we vacate the Board's decision that there is a likelihood of confusion between the marks, and we remand for further proceedings consistent with this opinion.

## **VACATED AND REMANDED**

### COSTS

Costs to Appellant.